* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employer-employee relationship existed between plaintiff and defendant-employer Comark on May 25, 2001.
2. On May 25, 2001, while plaintiff was employed by Comark, the parties were subject to and bound by the provisions of the Workers' Compensation Act, and Comark was insured by defendant-carrier Federal Insurance Company.
3. Plaintiff's average weekly wage is $703.38.
4. The parties stipulating all evidence from the prior hearing before Deputy Commissioner Nancy W. Gregory into evidence in the hearing before Deputy Commissioner Donovan.
5. Federal Insurance Company provided coverage to Comark from March 16, 1997 through March 16, 2002.
6. The issues for determination are:
 a. Whether plaintiff's January 26, 2004 incident is compensable.
 b. What type of benefits, including medical compensation, is plaintiff entitled to recover?
 c. Is Federal Insurance Company a proper defendant in this claim?
 d. Did plaintiff give proper notice to his former employer of the January 26, 2004 incident as required by N.C. Gen. Stat. §§ 97-22 through 24 and other provisions of the Act?
 * * * * * * * * * * * EXHIBITS
1. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit #1: Medical records
 b. Stipulated Exhibit #2: Letter dated 17 February 2004
2. The following exhibits were admitted during the deposition testimony of Dr. Curzan:
 a. Plaintiff's Exhibit #1: Medical records dated 26 February 2004
 b. Plaintiff's Exhibit #2: Medical records dated 20 April 2004
c. Plaintiff's Exhibit #3: Rating dated 14 June 2004
 d. Plaintiff's Exhibit #4: Letter dated 17 February 2004
 * * * * * * * * * * *
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. Plaintiff suffered an admittedly compensable right elbow injury on May 25, 2001. He initially contended he was entitled to past and future temporary total disability compensation and medical benefits, including treatment for carpal tunnel syndrome. Defendants denied compensation for carpal tunnel syndrome.
2. The matter came for hearing before Deputy Commissioner Nancy W. Gregory, now deceased. By Opinion and Award filed on February 5, 2004, plaintiff's claim for carpal tunnel syndrome was denied and he was awarded ongoing medical treatment for the right elbow injury. Plaintiff did not undergo surgery on the elbow but was treated conservatively. Plaintiff was found to have reached maximum medical improvement in August 2001 and was not entitled to temporary total disability benefits. Plaintiff appealed to the Full Commission, which affirmed the Opinion and Award of Deputy Commissioner Gregory in an Opinion and Award filed on November 5, 2004. Plaintiff appealed to the Court of Appeals, which affirmed the Opinion and Award of the Full Commission in an opinion filed on January 17, 2006.
3. The Findings of Fact of the Full Commission's Opinion and Award of November 5, 2004, are hereby incorporated herein by reference.
4. On January 26, 2004, plaintiff walked out of his house to retrieve schoolbooks from his car. He slipped on ice that had accumulated on the walkway and attempted to catch himself by grabbing a bush with his right hand. As plaintiff fell, he felt his elbow dislocate and he experienced pain in his right arm. Plaintiff landed on his buttocks without hitting his right arm or elbow on the ground.
5. Plaintiff was taken to the emergency room at Western Wake Medical Center. His elbow was x-rayed and he was diagnosed with a closed fracture dislocation of the right elbow. He was provided with medication and referred to Dr. Mark A. Curzan at Cary Orthopedic.
6. Plaintiff presented to Dr. Curzan on the January 29, 2004. Dr. Curzan examined plaintiff and reviewed the x-rays. He recommended a CT scan of the elbow and eventually surgical intervention. Plaintiff refused due to lack of insurance coverage and elected to continue with a sling. Plaintiff agreed to return in four days for additional x-rays to determine further management of the injury.
7. The x-rays taken on February 5, 2004, showed a 1-mm displacement of the coronoid fracture from its fracture bed. Otherwise, the joint was congruent. Dr. Curzan rendered the opinion, and the Full Commission finds as fact, that there was some subtle instability from the prior dislocation and coronoid fracture that likely precipitated the more recent fall, resulting in an inability of the elbow to sustain plaintiff's body weight when he attempted to check his fall by grabbing the bush. Dr. Curzan decided to maintain plaintiff's splint for an additional two weeks, then begin to work on the range of motion of the elbow. He opined that at the time there was no gross instability requiring surgery, but if instability continued after plaintiff regained motion, surgery might be required.
8. On February 16, 2004, Dr. Curzan responded to written questions posed by plaintiff's counsel and rendered the opinion, and the Full Commission finds as fact, that plaintiff's current injury was a natural and direct result of the May 2001 elbow dislocation and coronoid fracture that would not have occurred but for the weakened condition of his arm. This was plaintiff's first notice that his January 26, 2004, injury likely was related to the previous compensable elbow injury. By letter dated February 17, 2004, plaintiff notified defendants of his injury and requested payment for medical treatment.
9. On March 16, 2004, Dr. Curzan rendered the opinion, and the Full Commission finds as fact, that plaintiff could not "return to gainful employment which requires lifting and reaching for objects." He further gave plaintiff lifting restrictions of five pounds. It is noted, however, that plaintiff had not been employed since February 2002, and had not worked during the 52 weeks prior to the January 26, 2004 date of injury.
10. Plaintiff is a full-time accounting student at a community college. Plaintiff is currently looking for work in the accounting field, but without success. There is no evidence that plaintiff's lack of employment is related to his injury of January 26, 2004.
11. Plaintiff last saw Dr. Curzan on June 3, 2004. At that time, plaintiff continued to experience right elbow pain and lacked five degrees of full extension, an improvement over previous tests. Dr. Curzan opined that plaintiff did not require surgery but that physical therapy would help reestablish his terminal extension and relieve some of the discomfort.
12. On June 14, 2004, Dr. Curzan gave plaintiff a permanent partial disability rating of 10% to the right arm. Later, when shown plaintiff's 10% rating following the first injury, Dr. Curzan gave plaintiff a 15% rating, or an increase of 5%.
13. Dr. Curzan noted that the medical records provided of plaintiff's May 25, 2001, injury showed that the first dislocation resulted in a small chip being knocked off the end of the coronoid by the humerus bone as the dislocation occurred. It was a Type I fracture, denoted as such because of the small size of the chip. The second dislocation resulted in a Type II fracture, with a much larger piece of the coronoid being chipped off in the process of the dislocation. Dr. Curzan rendered the opinion, and the Full Commission finds as fact, that based upon plaintiff's history of prior injury, it would be very difficult to imagine such a significant coronoid fracture without having had a prior instability event and dislocation of the elbow to create the Type II injury.
14. After receiving medical records from the May 25, 2001, injury Dr. Curzan rendered the further opinion, and the Full Commission finds as fact, that plaintiff's elbow had not healed completely which, in effect, "set up" plaintiff to re-dislocate the elbow with subsequent trauma. He rendered the further opinion, and the Full Commission finds as fact, that the trauma to the elbow on January 26, 2004, was not significant enough to have caused the injury absent the previous dislocation.
15. On January 26, 2004, plaintiff fell at his home. As a direct result of the fall and without direct trauma to the elbow, plaintiff suffered a Type II fracture dislocation to his right elbow. Plaintiff would not have suffered such an injury had he not previously suffered a Type I fracture dislocation injury to the same elbow. Thus his injury on this occasion was the direct and natural result of his compensable injury by accident of May 25, 2001 and Comark is responsible for the consequences of the Type II fracture dislocation. Plaintiff gave Comark timely notice of this injury. Comark presented no evidence that it was prejudiced by the timing of such notice.
16. Dr. Curzan opined that plaintiff should have reached maximum medical improvement approximately six months from the date of the injury. However, no medical provider has found that plaintiff has reached maximum medical improvement from the January 26, 2004, injury by accident and plaintiff has been unable to complete the treatment recommended by Dr. Curzan.
17. Plaintiff's average weekly wage while employed by Comark was $703.48, yielding a compensation rate of $468.99 per week.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on May 25, 2001. N.C. Gen. Stat. § 97-2(6).
2. As a direct and natural result of this compensable injury, plaintiff suffered a second injury to the same elbow on January 26, 2004. N.C. Gen. Stat. § 97-29.
3. Plaintiff's notification to defendants of the relationship between the compensable injury of May 25, 2001, and the subsequent injury of January 26, 2004, was sufficient and did not result in any prejudice to defendants. N.C. Gen. Stat. § 97-22.
4. Upon an examination by Dr. Curzan or other appropriate physician suitable to plaintiff and a subsequent medical finding that plaintiff has reached maximum medical improvement from his January 26, 2004, injury, plaintiff is entitled to permanent partial disability compensation at the rate of $468.99 per week for 12 weeks as a result of the increased 5% rating to the right arm. However, if it is determined that plaintiff would be entitled to higher compensation under another provision of the Worker's Compensation Act, he would be entitled to collect that instead. N.C. Gen. Stat. § 97-31(13).
5. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure, or lessen the period of disability, including any subsequent treatment recommended by Dr. Curzan. N.C. Gen. Stat. §97-2(19).
6. Plaintiff was not employed for the 52 weeks prior to January 26, 2004. There is no evidence that plaintiff's unemployment is in any way related to either of his compensable injuries, but rather that plaintiff was attending school and looking for work. Further, although Dr. Curzan imposed some physical and lifting restrictions following plaintiff's injury, there was no evidence that these restrictions would have in any manner prevented plaintiff from finding employment in his chosen field of accounting. Accordingly, plaintiff is entitled to compensation benefits for lost wages as a result of his January 26, 2004, injury only for the period from the date of the injury until the March 16, 2004, specification of lifting restrictions by Dr. Curzan. N.C. Gen. Stat. § 97-29.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff $468.99 per week as temporary total disability compensation from January 24, 2004, until March 16, 2004. Because that compensation has already accrued, Defendants shall pay the amount to plaintiff in one lump sum. Defendants shall pay 8 percent interest in accordance with the law.
2. Subject to a reasonable attorney's fee herein approved, and upon a finding that plaintiff has reached maximum medical improvement, defendants shall pay permanent partial disability compensation to plaintiff in the amount of $5,627.88.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel. Defendants shall pay that amount directly to plaintiff's attorney.
4. Defendants shall pay medical expenses incurred or to be incurred by reason of the January 26, 2004, injury.
5. Defendants shall pay the costs, including the payment of an expert witness fee of $820.00 to Dr. Mark Curzan.
This 7th day of July 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________ DIANE C. SELLERS COMMISSIONER